# In the United States Court of Federal Claims

No. 09-454 C
(Filed: March 6, 2012)

| | | |
|---|---|---|
| ************************************ | | Motion to Dismiss, RCFC 12(b)(6); |
| JOYCE TERRY, | * | Exhibits Appended to Prior Pleading; |
| d/b/a SHIRT SHACK, | * | Materials Integral to Claim; Incorporation |
| | * | By Reference; Solicitation Is a Public |
| Plaintiff, | * | Record; <u>Avtel Services, Inc.</u>; Implied |
| | * | Contract to Consider Proposal Fairly and |
| | * | Honestly; Allegations of Bad Faith; Court |
| v. | * | Need Not Accept As True Allegations |
| | * | Concerning Effect of Exhibit; Alleged |
| | * | Breach of Express Contract; Lack of Subject |
| THE UNITED STATES, | * | Matter Jurisdiction Over Discrimination and |
| | * | Promissory Estoppel Claims; Existence |
| Defendant. | * | of Express Contract Precludes Implied- |
| | * | in-Fact Contract Claim Dealing With |
| ************************************ | | Same Subject Matter As Express Contract |

<u>Bonnie Michelle Smith</u>, Warner Robins, GA, for plaintiff.

<u>Arlene Pianco Groner</u>, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

     Before the court is defendant's motion to dismiss plaintiff's second amended complaint ("motion to dismiss"). Plaintiff Joyce Terry, doing business as Shirt Shack, alleges that the Army and Air Force Exchange Service ("AAFES") breached an implied-in-fact contract to consider honestly and fairly a proposal she submitted in response to a solicitation for the operation of a concession business at Fort Benning in Columbus, Georgia. Plaintiff also alleges that the AAFES acted in bad faith during its administration of, as well as breached, a separate, short-term commodity concession agreement executed by the parties in 2009 ("concession contract"). Defendant moves to dismiss the second amended complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that plaintiff fails to allege sufficient facts showing that the AAFES breached (1) an implied-in-fact contract to consider plaintiff's proposal honestly and fairly, and (2) the concession contract. The court deems oral argument unnecessary. For the reasons set forth below, the court <u>sua sponte</u> dismisses those claims over which it lacks jurisdiction and grants in part and denies in part as moot defendant's motion to dismiss.

# I. BACKGROUND[1]

## A.  Solicitation for a Concession Operation at Fort Benning

On October 6, 2008, the AAFES issued a solicitation for the operation of a concession business at Fort Benning.  Second Am. Compl. ¶ 5; AR 33.  Kay Dunbar served as the contracting officer.  AR 33.  The solicitation advised prospective offerors that Ms. Dunbar "may require offerors to submit confidential data [that] include[d] a projected operating statement using estimated sales shown in this solicitation" that she could utilize to evaluate each offeror's responsibility.  Id. at 71.  The solicitation also required each offeror to

> have adequate resources to perform the resulting contract and, upon request, furnish proof of same to the contracting officer.  The contracting officer may request a financial statement, a cost breakdown, a projected operating statement, or other data from any offeror.  Failure to furnish the data requested within the time specified may cause a firm to be determined nonresponsible.  AAFES further reserve[d] the right to determine the responsibility of the offerors based on factors including but not limited to the offeror's financial resources, business capacity,

---

[1]  The facts set forth in Parts I.A-B and I.D are derived from: the second amended complaint ("Second Am. Compl."); exhibits appended to plaintiff's prior pleading, which are referred to and identified in the second amended complaint, as well as an additional exhibit appended to the second amended complaint ("Pl.'s Ex."); an exhibit appended to defendant's motion containing plaintiff's concession contract, which is referred to in the second amended complaint ("Def.'s Ex."); and Solicitation No. SDVC 07-025-08-373 for a concession operation at Fort Benning, which is referred to throughout the second amended complaint and is part of the administrative record ("AR") in this case.  Although an amended complaint normally supersedes a prior complaint, Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 555 U.S. 438, 456 n.4 (2009), plaintiff appended only one exhibit, "Exhibit 7," to her second amended complaint.  The remaining six exhibits referenced in the second amended complaint were attached to plaintiff's prior pleading.  The court construes pleadings "so as to do justice," RCFC 8(e), and therefore treats the six exhibits appended to the amended complaint as if they had been appended to the second amended complaint.

Furthermore, a party pleading a claim founded on a contract "must identify the substantive provisions of the contract . . . on which the party relies.  In lieu of a description, the party may annex to the complaint a copy of the contract . . . , indicating the relevant provisions." RCFC 9(k).  In W & D Ships Deck Works, Inc. v. United States, the court deemed the solicitation at issue in a bid protest incorporated within the pleadings for purposes of RCFC 12(b) because it was within the category of documents contemplated by a former version of RCFC 9(k).  39 Fed. Cl. 638, 647 n.7 (1997).  Accordingly, the court considers the solicitation and concession contract as if plaintiff annexed them to her second amended complaint.  See infra Parts II, III.A.

performance record, integrity, management/business acumen, technical ability and facilities/equipment.

Id. at 35.  The AAFES intended to award a contract "to the responsive, responsible offeror whose proposal [wa]s best for AAFES, price/fee and other factors set out in the solicitation considered" and reserved the right to accept other than the lowest proposal and issue multiple awards . . . ." Id. at 36.

Exhibit C of the solicitation, titled "Special Provisions," set forth terms governing equipment, furniture, and movable trade fixtures furnished by both the AAFES and the concessionaire, i.e., the contract awardee.[2]  Id. at 55.  Title to concessionaire-furnished equipment, furniture, and fixtures remained with the concessionaire.  Id.  The solicitation permitted the concessionaire to utilize leased equipment during contract performance so long as Ms. Dunbar was furnished the lessor's name and address.  Id.  Offerors were further advised that

> [c]oncessionaire investment in equipment, furniture and fixtures for this contract is a business risk of the concessionaire.  It is expressly understood and agreed that neither AAFES nor any other agency or instrumentality of the United States is or will be liable to concessionaire for costs of concessionaire's investing in equipment, furniture or movable trade fixtures in the event of termination of this contract without extension.

Id.

Exhibit G, titled "Concessionaire Furnished Equipment," set forth the type and quantity of equipment required for conducting business at two separate concessionaire locations.  Id. at 73.  For business in the main exchange building, the concessionaire needed a heat transfer press and transfer machine, which had to "be new or in 'like new' condition . . . ."  Id.  The heat transfer press had to be "[c]apable of transferring rubber based and sublistatic ink transfers.  Insta Model 515 or equivalent."  Id.  The transfer machine had to be "[c]apable of transferring decals to caps/hats.  Insta Model 412 or equivalent."  Id.  The solicitation required that "[h]eat pressed items . . . be offered on a while-you-wait-basis."  Id. at 75.

Plaintiff submitted a proposal for a five-year contract with a thirty percent fee payable to the AAFES based upon her total adjusted gross sales.  Pl.'s Ex. 1 at 1.  Once all proposals were received, Ms. Dunbar requested a best and final fee offer from each offeror.  Pl.'s Ex. 6 at 1.  In response to Ms. Dunbar's request, plaintiff increased her proposed fee from thirty to thirty-seven percent.  Pl.'s Ex. 2 at 1; cf. Second Am. Compl. ¶ 12 (alleging that plaintiff "was asked to submit a new bid").  After receiving all best and final fee offers, Ms. Dunbar expressed concern that two offerors proposed unreasonably high fees.  Pl.'s Ex. 6 at 1.  She then requested that the

---

[2]  Exhibit G of the solicitation set forth requirements for concessionaire-furnished equipment, and Exhibit I enumerated equipment furnished by the AAFES.  AR 73-74, 78.

offerors submit a Monthly Projected Operating Statement ("MPOS") so that she could determine whether the offerors could operate their businesses at their proposed fees.  Id.  In response to Ms. Dunbar's request, plaintiff submitted a revised best and final fee offer in which she reduced her proposed fee from thirty-seven to twenty-seven percent.  Pl.'s Ex. 3; accord Second Am. Compl. ¶ 13.  Ms. Dunbar reviewed each offeror's MPOS and determined that all proposed fees were reasonable.  Pl.'s Ex. 6 at 1.  She then awarded a contract to The Shirt House, which proposed the highest fee–27.25 percent.  Id.; accord Second Am. Compl. ¶ 8.

Plaintiff protested the award to The Shirt House in a December 22, 2008 electronic-mail communication addressed to Ms. Dunbar.  Pl.'s Exs. 5-6; accord Second Am. Compl. ¶ 16.  According to plaintiff, the solicitation required the concessionaire to possess a heat transfer press and transfer machine onsite.  Pl.'s Ex. 5.  Plaintiff stated that she owned the necessary equipment, whereas The Shirt House did not.  Id.  She also alleged that Vickie Roldan, a Services Business Manager for the AAFES at Fort Benning, gave preferential treatment to The Shirt House and created a conflict of interest by improperly injecting herself into the procurement process.  Id.

On December 30, 2008, Ms. Dunbar denied plaintiff's protest, determining that it lacked merit.  Pl.'s Ex. 6 at 2; accord Second Am. Compl. ¶¶ 10, 17.  First, Ms. Dunbar explained that the AAFES considered all proposals in a manner that was consistent with applicable procurement procedures and the solicitation's criteria.  Pl.'s Ex. 6 at 1.  Second, she noted that the AAFES determined The Shirt House was eligible for a contract award, demonstrated satisfactory past performance, had the necessary organization and experience to perform the contract, and possessed the necessary technical equipment and facilities–or had the ability to obtain them–in order to perform the contract.  Id. at 2.  The Shirt House was awarded the contract, Ms. Dunbar explained, because it proposed the highest fee to the AAFES.  Id. at 1.  Third, Ms. Dunbar rejected plaintiff's interpretation of the solicitation's requirements concerning the heat transfer press and transfer machine, stating that the "contract does not require the contractor to have the equipment on the premises . . . ."  Id.  Finally, Ms. Dunbar rejected plaintiff's accusation that Ms. Roldan participated in the procurement, stating that Ms. Roldan, who was located at Fort Benning, had "no influence over or input" into the contract award decision, id. at 2, which was determined at the AAFES headquarters in Dallas, Texas, see id. at 1-2.

## B.  Plaintiff's Concession Contract

On January 22, 2009, less than one month after Ms. Dunbar denied plaintiff's protest of the contract award to The Shirt House, plaintiff and the AAFES executed a separate concession contract BEN 09-04, unrelated to the procurement described above, for the exhibition and sale of merchandise at Fort Benning.  Def.'s Ex. at 1.  The performance period under the concession contract ended on December 31, 2009.  Id.  Dates of performance, locations of performance, and the fee paid to the AAFES were determined "by mutual agreement between the Exchange General Manager (as Contracting Officer) and the concessionaire."  Id.  The concession contract provided that plaintiff would pay to the AAFES "a percentage of gross sales, as identified in the

Schedule," id., and the accompanying schedule indicated that plaintiff agreed to pay a twenty-five percent fee to the AAFES for each sales event, id. at 2.

### C.  Proceedings Before the United States Court of Federal Claims

On July 16, 2009, plaintiff filed a bid protest in the United States Court of Federal Claims ("Court of Federal Claims") challenging the award to The Shirt House.  She also alleged that the AAFES breached the concession contract.  Adjudicating plaintiff's motion to supplement the administrative record, the court ruled that supplementation was not warranted because plaintiff failed to allege that Ms. Dunbar exhibited bias or acted in bad faith during the procurement process.  Terry v. United States, 96 Fed. Cl. 156, 164-65 (2010).  The court explained that plaintiff's allegations focused entirely upon Ms. Roldan, id. at 164, and plaintiff failed to identify specific evidence in the administrative record that raised a question concerning the rationality of Ms. Dunbar's decision, id. at 164-65.

In a second decision, the court granted in part and denied in part defendant's motion to dismiss.[3]  Terry v. United States, 96 Fed. Cl. 131 (2010).  The court held that it lacked subject matter jurisdiction over plaintiff's bid protest pursuant to 28 U.S.C. § 1491(b)(1), but possessed jurisdiction under 28 U.S.C. § 1491(a)(1) based upon an implied-in-fact contract requiring the AAFES to fairly and honestly consider plaintiff's proposal.  Id. at 151-53.  It also dismissed for lack of jurisdiction Count II of the amended complaint, which addressed plaintiff's concession contract, and plaintiff's allegations of racial and gender discrimination.  Id. at 153-55.  The court later vacated its ruling with respect to Count II of the amended complaint.  Terry v. United States, 98 Fed. Cl. 736 (2011).

Defendant filed its answer to the amended complaint.  Thereafter, the court conducted a preliminary scheduling conference, during which it directed plaintiff to file a second amended complaint "set[ting] forth clear allegations of bad faith by the contracting officer during the challenged procurement (Count I) and identif[ying] with specificity the alleged breach of her concessionaire contract (Count II)."  Order, Aug. 29, 2011.  Plaintiff filed her second amended complaint on October 3, 2011, after which defendant filed its motion to dismiss.

### D.  Plaintiff's Second Amended Complaint

In Count I of her second amended complaint, plaintiff sets forth numerous allegations concerning Ms. Dunbar's conduct during the procurement process.  According to plaintiff, Ms. Dunbar "acted with bad faith" when she: (1) requested "multiple rebids" from offerors, Second

---

[3]  In a third, unpublished ruling, the court denied plaintiff's motion for judgment upon the administrative record, denied as moot plaintiff's motion for additional time to file a statement of facts after ruling on her motion to supplement the administrative record, denied plaintiff's motion for alternative dispute resolution, and denied as moot plaintiff's motion for a permanent injunction to set aside the contract award to The Shirt House.  Order, Nov. 30, 2010.

Am. Compl. ¶ 42; (2) discussed "the specifics of the bids" with Ms. Roldan, id. ¶ 43; (3) permitted Ms. Roldan to become "involve[d] with the bids, procurement, or specific bid information," id. ¶ 44; (4) failed to adhere to the solicitation's terms "by not enforcing" the requirement that the contract awardee had to own specific equipment, id. ¶ 45; (5) accepted "input" from Ms. Roldan concerning offerors' proposals, including Ms. Roldan's "repeated official influence" upon the outcome of the procurement, id. ¶ 46; (6) authorized Ms. Roldan to "orchestrate the award of the contract to one other than Plaintiff even though Plaintiff was the consistent best bidder[] and owned the machine as required in the solicitation," id. ¶ 47; (7) failed to amend the solicitation to reflect that the contract awardee was not required to own a heat transfer press and transfer machine, id. ¶¶ 48-49; (8) prejudiced plaintiff by failing to amend the solicitation because "such a material change in machine requirements would have changed the bid numbers for Plaintiff on the rebid," id. ¶ 48; and (9) worked with Ms. Roldan, who "deliberately made a negligent misrepresentation to the Plaintiff," and knew that plaintiff would rely upon Ms. Roldan's representation about what the solicitation required, id. ¶ 50. Asserting that the AAFES arbitrarily, capriciously, and unlawfully awarded a contract to The Shirt House, plaintiff seeks recovery of her bid preparation costs. Id. ¶¶ 51-52; Pl.'s Ex. 7.

In Count II of the second amended complaint, plaintiff alleges that the twenty-five percent fee she paid to the AAFES under the concession contract was greater than the fee paid by other vendors. Second Am. Compl. ¶ 54. Although plaintiff presents numerous allegations concerning the contracting officer's conduct, she does not identify by name the contracting officer who administered the concession contract. The agreement was signed by Kenneth L. Brewington, "General Manager acting as the Contracting Officer," Def.'s Ex. at 1, and the court therefore assumes that Mr. Brewington was the AAFES employee plaintiff identifies as the contracting officer.

According to plaintiff, Mr. Brewington "acted in bad faith" and breached the concession contract, "both express and implied," ¶¶ 56-62, when he: (1) improperly permitted Ms. Roldan "to exert official influence on the concessionaire rates," id. ¶ 55; (2) failed to "properly advertise" for plaintiff, id. ¶ 56; (3) deliberately and improperly placed plaintiff's kiosks "in slow retail zones to frustrate Plaintiff's sales," id. ¶ 57; (4) promised plaintiff that she could participate in a "Troop Night" sales event, for which plaintiff purchased $30,000 in merchandise in reliance upon the purported promise, and then reneged, leaving plaintiff with merchandise she could not sell, id. ¶¶ 58, 60; (5) failed to protect "the legitimate interests of the supplier through advertisement, rates and deliberate slow kiosk placement," id. ¶ 59; and (6) failed to fulfill both written and oral contract terms, id. ¶ 61. Plaintiff alleges that the AAFES acted irrationally, arbitrarily, and unlawfully by assigning "uneven percentages" to different vendors. Id. ¶ 62. Plaintiff seeks a permanent injunction in which the court "set[s] rates for temporary concessionaires" at Fort Benning. Id. Prayer for Relief ¶ 5.

6

## II.  LEGAL STANDARDS

### A.  Contracts With the United States

The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1) (2006).  Since the Tucker Act does not "create any substantive right enforceable against the United States for money damages," United States v. Testan, 424 U.S. 392, 398 (1976), the right to money damages must be found in a separate source of law, Lovelaides Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc); accord Martinez v. United States, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc).  "[I]n a contract case, the money-mandating requirement for Tucker Act jurisdiction is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011).

### B.  Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

An RCFC 12(b)(6) motion tests the sufficiency of a complaint. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); see also RhinoCorps Ltd. Co. v. United States, 87 Fed. Cl. 481, 492 (2009) ("A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced.").  The purpose of RCFC 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989)).  When considering an RCFC 12(b)(6) motion, the court "must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982)).  A failure to allege a cause of action upon which relief can be granted warrants a judgment on the merits rather than a dismissal for want of jurisdiction. Litecubes, LLC v. N. Light Prods., Inc., 523 F.3d 1353, 1361 (Fed. Cir. 2008).

The court must determine whether the plaintiff can make "allegations plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. Twombly, 550 U.S. at 557; see also id. at 570 (requiring that a complaint allege "enough facts to state a claim to relief that is plausible on its face"); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (stating that a plaintiff "must plead factual allegations that support a facially 'plausible' claim to relief").  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).  This plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully." Id.; see also id. (stating that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing Twombly, 550 U.S. at 555)). Neither allegations "that are 'merely consistent with' a defendant's liability," id. (quoting Twombly, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are sufficient, id. (citing Twombly, 550 U.S. at 555). Thus, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation & quotation marks omitted). A complaint need not contain "detailed" factual allegations, but those "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id.

The court assumes all well-pled factual allegations are true and indulges in all reasonable inferences in favor of the nonmovant. United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); accord Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001). However, it "is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" Acceptance Ins. Cos. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting Twombly, 550 U.S. at 555); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."). Furthermore, the court is not required to accept as true allegations that "contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Generally, courts consider "only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when deciding an RCFC 12(b)(6) motion to dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Thus, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56." RCFC 12(d). Taking judicial notice of public records does not require the court to treat a motion to dismiss as one for summary judgment. Sebastian v. United States, 185 F.3d 1368, 1374 (Fed. Cir. 1999); see also Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health, 503 F.3d 256, 273 n.11 (3d Cir. 2007) ("Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records."); Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005) ("In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice."); Gant v. United States, 63 Fed. Cl. 311, 314 (2004) (converting an RCFC 12(b)(6) motion into one for summary judgment because the defendant presented "documentary exhibits not subject to judicial notice" with its motion); cf. Phillips v. Bureau of Prisons, 591 F.2d 966, 969 (D.C. Cir. 1979) ("[W]hen passing on a motion attacking the legal efficacy of the plaintiff's statement of his claim, the court may properly look beyond the complaint only to items in the record of the case or to matters of general public record."). Additionally, documents appended to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a

district court in ruling on a motion to dismiss." Wright v. Assoc. Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994).  The reason for considering such documents is that the court "is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1327 (3d ed. 2004).

## III.  DISCUSSION

According to defendant, plaintiff does not allege sufficient facts in Count I to show that the AAFES breached an implied-in-fact contract for the honest and fair consideration of her proposal.  It also argues that plaintiff does not allege sufficient facts in Count II to show that the AAFES breached the concession contract.  In response, plaintiff concedes that defendant "may very well be correct that there is no possible way to prove what [plaintiff] has alleged since 2009 against AAFES/Fort Benning," Opp'n 2, but nevertheless contends that she "has articulated facts that can be reasonably inferred in her favor," id. at 3.  Therefore, plaintiff argues that dismissal pursuant to RCFC 12(b)(6) is inappropriate.

### A.  The Court Must Dismiss Count I of the Second Amended Complaint

Plaintiff sets forth numerous allegations in Count I concerning the terms of the solicitation.  According to plaintiff, the solicitation "required that the T-Shirt Operator maintain a machine on site to make T-Shirts for soldiers while they wait, and not to place orders to be printed off the military installation[] and picked up at a later time."  Second Am. Compl. ¶ 7.  Additionally, plaintiff alleges that Ms. Dunbar violated the solicitation's terms when she requested final proposals from offerors, id. ¶ 13, and issued an award to The Shirt House, which plaintiff contends was "unable to meet the requirements of the solicitation," id. ¶ 26, because it did not own an Anajet Garment Printer or other Heat Transfer Press and Transfer Machine "as covered under the Solicitation," id. ¶ 25.  The solicitation's terms are therefore integral to the claims plaintiff asserts in Count I.  See Lenox Hill Hosp., 131 F. Supp. 2d at 140 n.4.  Moreover, plaintiff, having cited the solicitation and appended a portion thereof to her prior pleading, has incorporated by reference the entire solicitation into her pleading.  See W & D Ships Deck Works, Inc., 39 Fed. Cl. at 647 n.7; Pl.'s Ex. 1 at 2-5.  As such, the solicitation, itself "a public document available to all bidders" of which the court can take judicial notice, Avtel Servs., Inc. v. United States, 70 Fed. Cl. 173, 194 (2006), is not a matter outside the pleadings for purposes of adjudicating defendant's RCFC 12(b)(6) motion.[4]

---

[4]  The fact that defendant produced the entire solicitation as part of the administrative record does not affect the court's determination.  Although it is true that an administrative record–described as "something of a fiction" because it represents an agency's compilation of "materials that adequately document the facts and reasoning supporting the agency's decision," PlanetSpace, Inc. v. United States, 90 Fed. Cl. 1, 4 (2009)–is considered a matter outside the pleadings, Lenox Hill Hosp. v. Shalala, 131 F. Supp. 2d 136, 140 n.4 (D.D.C. 2000), conversion

Plaintiff must plead factual allegations that support a facially plausible claim to relief, Cambridge, 558 F.3d at 1335, and permit the court to draw a reasonable inference that the government is liable for the alleged wrongdoing, Ashcroft, 129 S. Ct. at 1949.  As the United States Court of Appeals for the Federal Circuit ("Federal Circuit") has explained, "[g]overnment officials are presumed to act in good faith, and 'it requires "well-nigh irrefragable proof" to induce a court to abandon the presumption of good faith.'" T & M Distribs., Inc. v. United States, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (quoting Kalvar Corp. v. United States, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976)); see also Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (explaining that agency decisions, including those of contracting officers, are entitled to a presumption of regularity "unless that presumption has been rebutted by record evidence that the agency decision is arbitrary and capricious").  Conclusory assertions and speculation are insufficient to suggest bad faith.  See, e.g., Madison Servs., Inc. v. United States, 94 Fed. Cl. 501, 507 (2010) ("This allegation of bad faith, however, is merely a conclusion drawn from speculation as to the existence of certain occurrences . . . ."); Conway v. United States, 56 Fed. Cl. 572, 578 (2003) (determining that allegations of bad faith were "merely conclusory and . . . clearly contradictory to the record"); J. Cooper & Assocs., Inc. v. United States, 53 Fed. Cl. 8, 25 (2002) ("Mere speculation on the part of the plaintiff is an insufficient basis to meet the rigorous test to establish bad faith.").

The court must, as noted above, accept as true the facts alleged in plaintiff's second amended complaint, see Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999), but it is not bound to accept plaintiff's allegations with respect to the effect of an exhibit and may independently examine its contents, 5A Wright & Miller, supra, § 1327; see also Forrest v. Universal Sav. Bank, F.A., 507 F.3d 540, 542 (7th Cir. 2007) ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document.").  Thus, where the unambiguous terms of a contract conflict with the allegations set forth in a complaint, the contract controls.  INEOS Polymers Inc. v. BASF Catalysts & BASF Aktiengesellsch, 553 F.3d 491, 498 (7th Cir. 2009); accord Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005); see also LaSalle Bank Nat'l Ass'n v. Paramont Props., 588 F. Supp. 2d 840, 848 (N.D. Ill. 2008) ("[T]he Court considers the exhibits attached to the complaint, but where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.").

Plaintiff offers nothing more than her own conclusory statements and speculation concerning the procurement process and Ms. Roldan's participation therein.  First, plaintiff

---

of a motion to dismiss into one for summary judgment is appropriate when the court reviews agency action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (2006).  See Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1228 (D.C. Cir. 1993) (stating that judicial review of the agency record "may not be had without converting the motion to dismiss into a motion for summary judgment").  Here, however, the court does not engage in APA record review or utilize nonpublic documents in the administrative record to test the sufficiency of plaintiff's factual allegations.

claims that Ms. Dunbar "acted with bad faith by requesting multiple rebids on the solicitation." Second Am. Compl. ¶ 42. In her letter denying plaintiff's protest, Ms. Dunbar explained that she never requested that plaintiff modify her bid. Pl.'s Ex. 6 at 1. Rather, Ms. Dunbar expressed concern over what she perceived as unreasonably high fees and requested an MPOS from each offeror in order "to see if the contractor could operate at such a high fee." Pl.'s Ex. 6 at 1. The solicitation authorized Ms. Dunbar to request "a financial statement, a cost breakdown, a projected operating statement, or other data from any offeror." AR 35. Therefore, plaintiff has not made any showing that Ms. Dunbar acted in bad faith when she requested an MPOS from all offerors, including plaintiff, after which plaintiff independently revised her fee percentage, or did not honestly and fairly consider her proposal.[5]

Second, plaintiff alleges that Ms. Dunbar acted in bad faith through her various interactions with Ms. Roldan, who, according to plaintiff, improperly inserted herself into the procurement and decision making process. Second Am. Compl. ¶¶ 43-44, 46-47, 50. In her December 30, 2008 letter denying plaintiff's protest, Ms. Dunbar explained that Ms. Roldan "had no influence over or input into the decision to award the contract." Pl.'s Ex. 6 at 1. Plaintiff alleges no facts that call into question the accurateness of Ms. Dunbar's explanation and has not made any showing that Ms. Dunbar did not honestly and fairly consider her proposal.

Finally, plaintiff claims that Ms. Dunbar acted in bad faith in connection with her purported failure to "enforc[e] the specifics of the solicitation requirement of a Heat Transfer Press and Transfer Machine." Second Am. Compl. ¶ 45; see also id. ¶¶ 48 (claiming that plaintiff purchased the equipment because the "solicitation required it" and that Ms. Dunbar failed to amend the solicitation "to reflect that the machine was not required for award of the contract"), 49 (asserting that Ms. Dunbar's failure to amend the solicitation was "done in bad faith and was prejudicial"). All offerors were "encouraged to contact the contracting officer if [they] ha[d] a question concerning th[e] solicitation." AR 35. Plaintiff does not allege that she followed the procedure set forth within the solicitation for seeking clarification about any term or requirement set forth therein. Furthermore, plaintiff has not made any showing that Ms. Dunbar's purported failure to amend the solicitation was prejudicial and that Ms. Dunbar did not honestly and fairly consider her proposal.

As explained above, when a conflict between the contents of an exhibit and the allegations of a complaint arises, the exhibit typically controls. Forrest, 507 F.3d at 542; Centers, 398 F.3d at 933; LaSalle Bank Nat'l Ass'n, 588 F. Supp. 2d at 848. Indeed, the United States

---

[5] Plaintiff alleges that she was the only vendor that paid a fee of twenty-five percent to the AAFES, whereas other vendors paid less. Second Am. Compl. ¶¶ 34, 54. The court assumes the truth of plaintiff's allegation and notes that plaintiff initially submitted a proposal setting forth a fee of thirty percent. Pl.'s Ex. 1 at 1. Thus, Ms. Dunbar's concern about the offerors' abilities to operate at fees in excess of twenty-five percent, which plaintiff asserts was the highest fee paid by any vendor, and request for an MPOS do not suggest that Ms. Dunbar acted with impropriety or in bad faith.

Court of Appeals for the Seventh Circuit observed: "A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." In re Wade, 969 F.2d 241, 249 (7th Cir. 1992). Here, plaintiff's allegations conflict with the terms of the solicitation, the latter of which is controlling. Specifically, the solicitation did not require an offeror to own or purchase equipment in order to participate in the procurement. In fact, the solicitation expressly permitted the concessionaire to lease equipment intended for use during contract performance, provided it furnished the lessor's name and address to Ms. Dunbar. See AR 55. Furthermore, the solicitation advised offerors that any investment in equipment by the concessionaire constituted "a business risk" borne solely by the concessionaire. Id. ("[N]either AAFES nor any other agency or instrumentality of the United States [wa]s . . . liable to concessionaire for costs of concessionaire's investing in equipment . . . in the event of termination of this contract without extension."). If the government was not liable to the concessionaire for any investment in equipment once a contractual relationship was established, then, a fortiari, the government was not liable for an offeror's investment in equipment the offeror made during the procurement process and prior to the contract award. Plaintiff's allegations concerning the solicitation's requirements are therefore contradicted by the solicitation itself.

In short, plaintiff presents conclusory and speculative allegations that are contrary to (1) the exhibits appended to and incorporated by reference in her pleadings and (2) the terms of the solicitation at issue. In such circumstances, the contents of the exhibits and solicitation control, and the court need not accept as true plaintiff's allegations related thereto. Because plaintiff fails to allege facts showing that Ms. Dunbar acted in bad faith and did not fairly and honestly consider plaintiff's proposal, the court grants defendant's motion to dismiss with respect to Count I.

### B. The Court Must Dismiss Count II of the Second Amended Complaint

In Count II, plaintiff alleges numerous acts of bad faith on the part of Mr. Brewington that she contends amount to breaches by the AAFES of the concession contract. These include: (1) discriminating against plaintiff by requiring her to pay a higher fee than those paid by other vendors, Second Am. Compl. ¶¶ 33-38, 62; (2) failing to advertise on behalf of plaintiff, id. ¶ 56; (3) assigning plaintiff's kiosk to locations with less customer traffic in order to frustrate sales and adversely affect her interests, id. ¶¶ 57, 59; (4) misrepresenting to plaintiff that she could participate in a "Troop Night" sales event, for which plaintiff asserts a claim for promissory estoppel, id. ¶¶ 58-60; and (5) failing to honor "all written and oral contracts, express or implied," id. ¶¶ 56-62.

Plaintiff does not expressly seek money damages for the alleged breach of the concession contract. See id. Prayer for Relief ¶ 5 (requesting that the court issue a permanent injunction "set[ting] rates for temporary concessionaires at Fort Benning at the same equal rate as mandated by policy and standards"). In Holmes, the Federal Circuit explained that "when a breach of contract claim is brought in the Court of Federal Claims under the Tucker Act, the plaintiff

comes armed with the presumption that money damages are available, so that normally no further inquiry is required."  657 F.3d at 1314; see also Sanders v. United States, 252 F.3d 1329, 1334 (Fed. Cir. 2001) (stating that, "in the area of government contracts, . . . there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement").  As part of her breach of contract claim, plaintiff does allege that she incurred a loss of $30,000 in inventory after Mr. Brewington reneged on a promise permitting plaintiff to participate in a "Troop Night" sales event.  Second Am. Compl. ¶¶ 58, 60.  Thus, the court is satisfied that plaintiff seeks money damages for the purported breach of the concession contract.  Nevertheless, as explained below, the court lacks jurisdiction to entertain two of plaintiff's claims and to award equitable relief, and plaintiff's remaining allegations fail to state a claim upon which relief can be granted.

**1.  The Court Lacks Jurisdiction Over Discrimination and Promissory Estoppel Claims, and Plaintiff's Request for Equitable Relief**

The court previously dismissed plaintiff's allegations of racial and gender discrimination, see Second Am. Compl. ¶¶ 33-38, for lack of subject matter jurisdiction, see Terry, 96 Fed. Cl. at 155; see also Order 2, June 28, 2011 (reaffirming the court's prior ruling that it lacked jurisdiction over plaintiff's discrimination allegations).  The Court of Federal Claims is not a district court.  See Simmons v. United States, 71 Fed. Cl. 188, 193 (2006); see also 28 U.S.C. ch. 5 (describing the various federal district courts).  District courts possesses exclusive jurisdiction over discrimination claims.  See 28 U.S.C. § 1343(a)(4).  To the extent plaintiff reasserts that the AAFES required her to pay a fee that exceeded a percentage paid by other vendors, Second Am. Compl. ¶ 54, such allegations fall within her previously dismissed discrimination claim and, therefore, cannot be entertained by the court.

The court also lacks jurisdiction over plaintiff's claim of promissory estoppel, id. ¶ 60, which is "another name for an implied-in-law contract claim," Hubbs v. United States, 20 Cl. Ct. 423, 427 (1990).  An agreement implied in law "is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'"  Hercules Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923)); see also Int'l Data Prods. Corp. v. United States, 492 F.3d 1317, 1325 (Fed. Cir. 2007) (explaining that an implied-in-law contract is one "in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice").  The Tucker Act "does not reach claims based on contracts implied in law . . . ."  United States v. Mitchell, 463 U.S. 206, 218 (1983); see also Merritt v. United States, 267 U.S. 338, 341 (1925) ("The Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law."); Steinberg v. United States, 90 Fed. Cl. 435, 443 (2009) ("Promissory estoppel . . . requires the court find an implied-in-law contract, a claim for which the United States has not waived its sovereign immunity.").

13

Plaintiff also seeks an injunction directing the AAFES to establish equal rates for all vendors conducting business at Fort Benning.  Except in three statutorily defined circumstances, the court lacks jurisdiction to award injunctive relief.  See Kanemoto v. Reno, 41 F.3d 641, 644-45 (Fed. Cir. 1994) ("The remedies available in [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances . . . .").  None of those circumstances applies here.  See 28 U.S.C. § 1491(a)(2) (providing the court with jurisdiction to issue, "as incident of and collateral to" an award of money damages, "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records"); id. (providing the court with jurisdiction to render judgment in nonmonetary disputes arising under the Contract Disputes Act of 1978); id. § 1491(b)(2) (providing the court with jurisdiction to award declaratory and injunctive relief in bid protests); accord Pellegrini v. United States, No. 11-224L, 2012 WL 171912, at *7 (Fed. Cl. Jan. 20, 2012).

Accordingly, plaintiff's discrimination and promissory estoppel claims are dismissed, see RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."), and the court lacks jurisdiction to award equitable relief.

### 2.  Plaintiff's Remaining Allegations Fail to State a Claim Upon Which Relief Can Be Granted

Turning to plaintiff's allegations asserting the breach of "express and implied" contractual provisions by Mr. Brewington, see Second Am. Compl. ¶¶ 56-62, neither party disputes that plaintiff and the AAFES entered into the concession contract, Def.'s Ex. at 1-6.  It is "well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract."  Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002).  Here, plaintiff alleges that Mr. Brewington and the AAFES breached the concession contract and a purported implied-in-fact contract, but she fails to allege facts showing that the latter was unrelated to the subject matter encompassed by the former.  Consequently, plaintiff's purported implied-in-fact contract is foreclosed by the concession contract.  See Bank of Guam v. United States, 578 F.3d 1318, 1329 (Fed. Cir. 2009).

Next, plaintiff alleges that Mr. Brewington "promis[ed]" plaintiff that she could participate in a "Troop Night" sales event–a promise upon which plaintiff contends she relied to her detriment–and then reneged on that promise.  Second Am. Compl. ¶¶ 58, 60; see also id. ¶ 61 (alleging breach of "oral contract terms with Plaintiff").  She also claims that Mr. Brewington failed to advertise plaintiff's business, id. ¶ 56, and deliberately located her kiosk in "slow retail zones to frustrate Plaintiff's sales," id. ¶ 57.  Plaintiff fails to identify any concession contract provision that Mr. Brewington and the AAFES purported breached based upon these allegations.  Indeed, the concession contract expressly indicated that the AAFES did

14

> not guarantee that the concessionaire will be scheduled and permitted to exhibit
> and sell merchandise.  The performance dates, exact locations and fee to AAFES
> will be determined by mutual agreement between the Exchange General Manager
> (as Contracting Officer) and the concessionaire. . . .
>
> . . . .
>
> . . . AAFES make no representation as to the number and frequency of
> sales events or volume of business contractor may anticipate under this contract.

Def.'s Ex. at 1.  Furthermore, the concession contract stated: "Except as otherwise specifically provided in this contract, all changes, modifications, additions or deletions to this contract must be prepared in writing as formal amendments signed by both parties and approved in accordance with provisions of applicable regulations."  Id. at 3.  Plaintiff assented to these concession contract terms, which indicate that the AAFES was not obligated to (1) allow plaintiff to participate in the "Troop Night" sales event or (2) advertise on her behalf.  See id. at 1. Moreover, the location of plaintiff's kiosk and the fee she paid to the AAFES were "determined by mutual agreement."  Id.  The schedule appended to the concession contract indicates that plaintiff, on ten separate occasions, agreed to pay a twenty-five percent fee to the AAFES.  See id. at 2.  Consequently, plaintiff fails to allege facts showing that the AAFES breached the concession contract.

In short, the court lacks jurisdiction over and dismisses plaintiff's (1) discrimination and promissory estoppel claims and (2) request for injunctive relief.  The court is not bound to accept plaintiff's allegations concerning the effect of her concession contract, which are conclusory, speculative, and contrary to the terms thereof.  Because plaintiff fails to allege facts showing that the AAFES breached the concession contract, the court grants in part and denies in part as moot defendant's motion to dismiss with respect to Count II.

## IV.  CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART AS MOOT**.  Plaintiff's discrimination and promissory estoppel claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction, and plaintiff's remaining allegations are **DISMISSED WITH PREJUDICE**.  The clerk is directed to enter judgment accordingly.  No costs.

**IT IS SO ORDERED**.

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge